UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA
-------------------------------------------------------------X
UNITED STATES OF AMERICA,

                                                          Case No. 21-CR-133 (JDB)

- against -                              **DEFENDANT THOMAS FEE'S**
                                                          **SENTENCING MEMORANDUM**

THOMAS FEE,

                Defendant.
-------------------------------------------------------------X

## INTRODUCTION

Defendant, Thomas Fee, by and through his attorney submits this Sentencing Memorandum setting forth factors we ask the Court to consider in determining a sentence that is sufficient, but not greater than necessary, to comply with the prescriptions set forth in 18 U.S.C. § 3553(a). Based upon Thomas's full acceptance of responsibility, his cooperation with law enforcement, his lack of any prior criminal record, his lifetime of service and good works, we submit that a probationary sentence with restitution of $500 is appropriate. Such a sentence will "promote respect for the law" as directed by 18 U.S.C. § 3553 (a)(2)(A).

Thomas Fee is a 54 year old retired member of both the Fire Department of the City of New York and Steamfitters Local 638 Union. Prior to his arrest in this case Thomas had never been charged with a crime in his life. He regrets terribly his part in the horrible events of January 6, 2021. On that day he made decisions and acted in a manner completely out of character for him. They do not reflect who he is as a person and the life he has lived. It has been said that, "Each of us is more than the worst thing we've ever done."[1] Thomas Fee illegally entered the U.S. Capitol on January 6, 2021. In doing so he played a part in a shameful event that shocked the country and the world. But we ask the Court to not judge him solely on his actions

---

[1] Civil rights attorney Bryan Stevenson.

1

on January 6, 2021.  We asked that the Court also consider his lifetime of service, marked by acts of heroism and volunteerism.  We respectfully submit that if this is done, the Court will find as the United States Probation Office did, that a probationary sentence with restitution is warranted in this case.

## OFFENSE CONDUCT

Thomas Fee is to be sentenced on his guilty plea to the misdemeanor offense of Parading, Demonstrating, or Picketing in a Capitol Building, in violation of 40 U.S.C. Section 5104(e)(2)(G).  The plea was pursuant to a plea agreement with the United States Attorney's Office as part of Thomas's wish to take responsibility for his conduct.  The admitted conduct involved his illegal entry into the United States Capitol Building on January 6, 2021, where he remained for approximately forty minutes.

While Thomas did not force his way into the U.S. Capitol Building (video surveillance shows him entering through an open door that had previously been breached), he had no right to enter the building or remain inside.  During the approximate forty minutes he was inside the building Thomas did not engage in any acts of violence or vandalism.   While inside the building he took some "selfie" photos of himself, which he texted to a friend.  He walked around the building and interacted with other individuals who similarly did not belong there.  After being inside for approximately forty minutes, he walked out of the building of his own volition and went back to his hotel room.  While inside the U.S. Capitol and afterwards he did not post anything about the events on social media.  Prior to January 6, 2021, Thomas had never taken part in political activity of any kind.  He is not and has never been a political person.  There is no suggestion that he went to Washington D.C. with the intent to engage in criminal activity.  But unfortunately, on that date he did so and he has chosen to take responsibility for that.

Less than two weeks after January 6, 2021, Thomas was contacted by law-enforcement and voluntarily surrendered. During his arrest he freely turned over his cellular telephone when asked to do so by the arresting agents. In sum, he fully cooperated with the authorities.

## THE SENTENCING FACTORS IN 18 U.S.C. § 3553(a)

Title 18 U.S.C. § 3553 sets forth the factors courts must consider in imposing sentence. The first factor is "a broad command to consider 'the nature and circumstances of the offense and the history and characteristics of the defendant.'" Gall v. United States, 552 U.S. 38, 49–50 & n.6 (2007); see also United States v. Perez-Frias, 636 F.3d 39, 43 (2d Cir. 2011). The second factor requires consideration of the "general purposes of sentencing," that is, imposition of a sentence reflecting the seriousness of the offense, promoting respect for the law, and providing "just punishment" as well as specific and general deterrence. See United States v. Carr, 557 F.3d 93, 108 (2d Cir. 2009). The district court must also consider the sentencing range established by the Guidelines, as well as "any pertinent policy statement" issued by the Sentencing Commission [§ 3553(a)(4), (5)], and the "need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct" [§ 3553(a)(6)]. Ultimately, "the court shall impose a sentence sufficient, but not greater than necessary, to comply with [these purposes]." 18 U.S.C. § 3553(a). Applying the 18 U.S.C. § 3553 factors to the nature of the charged offense and Thomas Fee's background, as detailed below, strongly supports a sentence of probation with restitution.

**Background and Character**

Thomas was raised in the town of Freeport on Long Island, New York, where he still resides to this day. He was one of eight children in a household with both parents. As detailed in the U.S. Probation Presentence Investigation Report ("PSR"), his upbringing was far from perfect but he was provided for materially and loved his parents. PSR ¶ ¶ 31-34. As a child he struggled academically, likely in part as a result of unaddressed learning disabilities. But in 1986 he graduated from Freeport High School, where he was an award winning member of the lacrosse team. He attended community college for less than a year, then left to enter the workforce. PSR ¶ ¶ 47-48.

Steamfitter Union Work

After leaving school Thomas always worked, first in odd jobs such as landscaping and construction. Then in 1989 he joined the Steamfitters Local 638 Union. Steamfitters install and maintain the high pressure pipes used in the plumbing, heating and cooling systems in large buildings. Among the many letters of support attached as Exhibit A, is the letter of fellow steamfitter Alexander L. Retenski. In his letter Mr. Retenski notes the dangerous nature of the job and that Thomas was often in charge of safety, providing advice and giving lessons. He also recounts how Thomas "would often volunteer to handle the extremely dangerous tasks while we watched safely from the ground." Thomas remained an active member of Local 638 for thirty years until his retirement in 2019.

Service in the FDNY

In 1998 Thomas fulfilled his childhood dream when he graduated from the NYC Fire Academy and became a member of the New York City Fire Department ("FDNY"). He would go on to serve in the FDNY for twenty-two years. These were eventful years for both him and

4

New York City.

On the morning of September 11, 2001, Thomas was working as a member of FDNY Engine 225 in East New York, Brooklyn. When the terrorists attacked the World Trade Center, the largest mobilization in FDNY history began. That morning Thomas and the other members of Engine 225 drove into lower Manhattan and entered a warzone at the World Trade Center. They immediately joined in the search and rescue operations. Thomas would remain there for the next 24 hours. What was initially an emergency response operation, sadly soon became a recovery operation. Thomas spent the following months alongside other members of the FDNY at what became known as the "Pile" where they dug through the rubble recovering bodies and body parts.

Thomas is reluctant to discuss his experiences on September 11, 2001 and thereafter. On that day 343 members of the FDNY perished. Since that time hundreds of other members of the FDNY have died from illnesses related to the time they spent at Ground Zero. His experiences on September 11, 2001 and during the recovery operation took a toll on him both mentally and physically. He began receiving mental health treatment and was diagnosed with Post Traumatic Stress Disorder (PTSD). He was also diagnosed with a number of physical ailments related to the time he spent at Ground Zero. The most serious of which is Prostate Cancer, which he was diagnosed with in 2019. His treatment included prostate removal surgery. The cancer diagnosis necessitated his retirement from the FDNY in 2020. Attached as Exhibit B is a letter from the World Trade Center Health Program listing the various mental and physical ailments Thomas suffers as a result of his work at the World Trade Center.

After September 11, 2001, Thomas continued his career in the FDNY and was promoted to the prestigious FDNY Special Operations Command (SOC). The SOC is a team of specialists

who assist regular firefighting units in unique or highly critical situations. While a member of the SOC Thomas was involved with numerous rescue situations. One of the most notable was his rescue of thirteen people, including a pregnant woman and children, who were trapped on the roof of a burning building during Hurricane Sandy on the evening of October 29, 2012. While the hurricane raged, Thomas was part of a team that responded in a boat through the flooded streets of the Rockaway neighborhood of Queens, New York. For his actions that night he was awarded both the FDNY Hugh Bonner Medal and the FDNY Honor Legion Medal. Attached as Exhibit C is the FDNY Medal Day 2013 description of Thomas's actions that day. The description describes that, "FF Fee climbed from the boat and onto a security gate. Then, using a knife he cut foot holes into an awning, he climbed up the awning and onto the roof where the waiting group of frightened victims huddled. Despite a language barrier, FF Fee calmed them and managed to lower two victims down to the waiting boat." The fire progressed rapidly to the point that the roof was no longer safe, but there was no time to lower any more people to the boat below. So Thomas then used a door to devise a make-shift bridge into a neighboring building, over which the remaining people fled. The fire progressed into that building as well, trapping Thomas and the people in an apartment. He again acted and devised a second make-shift bridge so the people could escape back into a part of the first building that had not yet been engulfed in flames. The award narrative further states, "Surrounded by danger--a rapidly spreading, wind-driven fire, flooding and hurricane force winds—FF Thomas Fee risked his life to save 13 people from the double threat of fire and water."

While a member of the FDNY Thomas also took time to volunteer to help others while not working. Retired FDNY Lieutenant James Earl is an Executive Board member of H.E.A.R.T. 911, a volunteer organization of first responders who help individuals, families and

communities that have been affected by natural and man-made disasters. (https://www.heart911.org) Mr. Earl details Thomas's involvement as a volunteer with the organization, which included "a trip to New Orleans a year after Hurricane Katrina, several veteran home builds, and trips to Fort Drum, NY to cook for our troops on family day." Thomas's volunteerism through his work with H.E.A.R.T. 911 is a further reflection of who he has been throughout his life – a person determined to help others any way he can.

### Volunteer Fireman

Thomas's involvement with firefighting did not begin with the FDNY. While still in high school he started serving as a volunteer in the Freeport Fire Department. Most areas of Long Island are not served by a professional paid fire department. Instead, the communities rely on volunteers to staff volunteer fire departments. Thomas started volunteering at the Freeport Fire Department when he was a teenager. He also volunteered in the nearby town of Hempstead's Fire Department. While a volunteer fireman Thomas used the skills he learned in the FDNY to train the other volunteer firemen, most of whom are not professional firefighters. His rescue skills were put to use on many occasions and twice he was honored for his actions in responding to fires as a volunteer. Attached as Exhibit D are copies of the Silver Medal of Valor award Thomas received in the year 2000 and the Bronze Medal of Valor which he received in the year 2002. These awards were given in recognition of occasions where he responded to fires and saved people. He continued to volunteer as a fireman until his arrest in this case. In total he was a volunteer fireman for over thirty-five years.

### Sobriety and Sobriety Counseling

As noted in the PSR, Thomas comes from a family with a history of alcohol abuse. After years of abusing alcohol himself, in 1994 Thomas decided to seek help. He began attending

Alcoholic Anonymous meetings and he has been sober for twenty-seven years. Over that time he has counseled many other individuals struggling with alcohol abuse. This includes fellow firemen, steamfitters and even strangers who were told to contact him for help. Fellow steamfitter Alexander Retenski recounts in his letter that earlier in his career he struggled with alcohol abuse. Thomas reached out to him to offer advice and counseling, "he took me aside to confide in me, that he too knew what it was like, and that there was a solution to this intemperance." Retired New York City Police Detective Edward O'Driscoll in his letter of support states that he put family members in touch with Thomas to help them with their substance abuse. Mr. O'Driscoll goes on to state that Thomas's "first passion was the FDNY and his second passion is helping people with their addictions." Thomas's girlfriend Tallyann Byrne in her letter of support describes how, "Thomas's friends and peers knowing the kind of person he is, feel comfortable asking him if he could help a friend of theirs and he always does without hesitation." Without compensation or any personal gain Thomas has for decades devoted countless hours and energy to help others battle their addictions.

## CONCLUSION

Thomas Fee made some truly bad decisions and committed a crime on January 6, 2021. As he states in his letter to the Court attached as Exhibit E, "I know the only person responsible for this is myself." He bears great shame and regret over his actions and the harm they caused that day. He recognizes those actions violated the "core values" he has tried to live his life by: Honor, Ethics, Accountability, Responsibility, Trust and Integrity. But Thomas should not be judged solely by his actions on that date. We ask that he also be judged by the actions and the good life he lived for the 53 years prior to January 6, 2021.

For the foregoing reasons, we submit that the goals set forth in 18 U.S.C. § 3553(a) will be fulfilled in this case by a term of probation with restitution of $500. Such a sentence will be sufficient, but not greater than necessary, to reflect the seriousness of the offense, promote respect for the law, provide "just punishment," as well as specific and general deterrence.

DATED:   March 29, 2022

          Respectfully submitted,

/s/ Dennis J. Ring
Dennis J. Ring, Esq.
*Attorney for Thomas Fee*
148-29 Cross Island Parkway
Whitestone, New York 11357
Telephone: (718) 357-1040
Fax: (718) 357-4926

## CERTIFICATE OF SERVICE

    I certify that on March 29, 2022 this document was filed via ECF so that a copy of the document was transmitted to both AUSA Susan Lehr and U.S. Probation Officer Crystal S. Lustig in an electronic format.

                                                  /s/ Dennis J. Ring

                                                  Dennis J. Ring
                                                  *Attorney for Thomas Fee*
                                                  148-29 Cross Island Parkway
                                                  Whitestone, New York 11357