```
 1                IN THE UNITED STATES DISTRICT COURT
                   FOR THE DISTRICT OF COLUMBIA
 2

 3     United States of America,      ) Criminal Action
                                      ) No. 21-cr-133
 4                    Plaintiff,      )
                                      ) SENTENCING - BY VIDEO
 5     vs.                            )
                                      ) Washington, DC
 6     Thomas Joseph Fee,             ) April 1, 2022
                                      ) Time:  10:00 a.m.
 7                    Defendant.      )
       _____
 8
                    TRANSCRIPT OF SENTENCING HEARING
 9                          HELD BEFORE
                  THE HONORABLE JUDGE JOHN D. BATES
10                   UNITED STATES DISTRICT JUDGE

11     _____

                       A P P E A R A N C E S
12
       For Plaintiff:      Susan Lehr
13                         DOJ - USAO
                           1620 Dodge Street, Suite 1400
14                         Omaha, NE  68102
                           (402) 661-3715
15                         Email:  Susan.lehr@usdoj.gov

16     For Defendant:      Dennis Ring
                           Dennis J. Ring, Esq., PC
17                         148-29 Cross Island Parkway
                           Whitestone, NY  11357
18                         (718) 357-1040
                           Email:  Dennisringlaw@gmail.com
19
       Probation Officer: Crystal Lustig
20


21     _____

22     Court Reporter:         Janice E. Dickman, RMR, CRR, CRC
                               Official Court Reporter
23                             United States Courthouse, Room 6523
                               333 Constitution Avenue, NW
24                             Washington, DC  20001
                               202-354-3267
25
```

1          THE COURTROOM DEPUTY:  Your Honor, we have criminal

2     action 21-133, *United States of America versus Thomas Fee*.  We

3     have Ms. Susan Lehr representing the government, Mr. Dennis

4     Ring representing Mr. Fee.  And we also have Ms. Crystal Lustig

5     representing probation.  And all parties are appearing by

6     video.

7          THE COURT:  All right.  Good morning to everyone.

8          THE COURTROOM DEPUTY:  Good morning, Your Honor.

9          THE COURT:  We're here for sentencing in this matter.

10    It's a plea to one count of the information, and that count was

11    a misdemeanor.  And, therefore, in accordance with the Federal

12    Rules of Criminal Procedure, we're proceeding by video, with

13    the defendant's consent.

14         We have the consent of you and Mr. Fee for this

15    sentencing to take place by video conference?

16         MR. RING:  Yes, Your Honor.

17         THE COURT:  In any event, I'm going to hear that.

18    Under the CARES Act I could conduct this by video, as well as

19    all the findings that have been made by the chief judge and the

20    judicial conference.

21         Let me start by asking you, Mr. Ring, on behalf of

22    yourself and Mr. Fee, whether you've received the presentence

23    report, had a chance to review it, and whether there are any

24    remaining questions or issues with respect to it?

25         MR. RING:  We have received it.  I've reviewed it

1     with my client.  There are no additions.

2                THE COURT:  Ms. Lehr, the same series of questions:

3     Have you received, reviewed, and any remaining issues with

4     respect to the presentence report?

5                MS. LEHR:  I've received it, I have reviewed it, and

6     there's no outstanding issues.

7                THE COURT:  Thank you.  And I will accept the

8     presentence report as findings of fact on issues not in dispute

9     pursuant to Federal Rules of Criminal Procedure 32(i)(3)(A).

10               So, Mr. Fee is here because the defendant has plead

11    guilty to Count 4 of a four-count information, and that count

12    is parading, demonstrating, or picketing in a Capitol building,

13    in violation of United States Code § 5104(e)(2)(G).  This is a

14    Class B misdemeanor and, accordingly, the sentencing guidelines

15    do not apply for sentencing in this matter.

16               We're all in agreement with that.  Ms. Lehr?

17               MS. LEHR:  Yes, Your Honor.

18               THE COURT:  And, Mr. Ring?

19               MR. RING:  Yes, Your Honor.

20               THE COURT:  So I think the only thing I need to note,

21    however, is the criminal history here, note that as well.  And

22    in accordance with the presentence report, I conclude that

23    there is no relevant criminal history that will be taken into

24    account.  Defendant does not have any prior criminal history.

25               With that, and I said a moment ago, that this is a

1    misdemeanor, the sentencing guidelines do not apply.  So the

2    sentence will be determined based upon the nature and

3    circumstances of the offense, the individual characteristics

4    overall relevant to the defendant, the particular conduct at

5    issue here and, of course, being mindful of sentences that

6    other participants in the January 6th event who were convicted

7    of a 5104 offense have received.  And I will do that through

8    the application, as I must, of the factors set out in Federal

9    18 U.S. Code § 3553(a).

10            With that, I think that we can turn right to counsel

11   and then to Mr. Fee to address the Court regarding sentencing.

12   I'll start with the government and then I'll move to defense

13   counsel and then, Mr. Fee, if you wish to address the Court.

14            I will note that I've read everything.  I'm familiar

15   with the papers and the events here.  And, indeed, particularly

16   for the government, I have not only reviewed the table that you

17   provided and your argument in the sentencing memo and the basis

18   of it, but I have to do an independent assessment of sentencing

19   in these cases.  And will rely both on your -- that is, the

20   government's -- and my own sense of sentences in other cases.

21            So with that, Ms. Lehr.

22            MS. LEHR:  Understood, Your Honor.  Thank you.  I

23   also want to ask the Court if it had an opportunity to review a

24   video that I sent to chambers earlier this week?

25            THE COURT:  I did review that video in all its length

1   and all its particulars, and was able to compare it with some

2   of the stills of that video in your sentencing materials to

3   identify Mr. Fee.

4           MS. LEHR:  Thank you, Your Honor.  So with that put

5   on the record, the government would offer that video as Exhibit

6   No. 1.

7           THE COURT:  It will be accepted without objection,

8   Mr. Ring?

9           MR. RING:  No objection.

10          THE COURT:  Ms. Lehr.

11          MS. LEHR:  Thank you, Your Honor.  January 6 was not

12  just an attack on the Capitol, it was just not an attack on the

13  hundreds of men and women who work there, it was not just an

14  attack on the law enforcement officers who were protecting the

15  building.  As this Court has previously stated, it was a threat

16  to our democratic process and an attack on our democratic

17  values.  Every rioter who was inside the Capitol presented an

18  energy, presented a threat, and at times a violent threat, both

19  to members of congress, their staff, other police officers,

20  other employees at the Capitol and even other rioters who were

21  in the building.

22          Each minute was another minute for the beleaguered

23  law enforcement officers, a minute was a minute our democratic

24  process was delayed.  You cannot count a riot of one.  Mr. Fee

25  was part of the assault on the Capitol.

1          Focusing on his individual conduct, he spent

2     approximately 40 minutes inside the Capitol.  He entered the

3     building with hundreds of others flowing in, entered the Senate

4     wing door breach.  The door was breached by another rioter that

5     had climbed through one of the two windows on either side of

6     the door that were shattered.  His entry was within a minute of

7     the windows and doors being breached.  After walking in, going

8     back down a hallway and into the Crypt, he returned to the

9     Senate wing door area where rioters were continuing to pour

10    into the building and started directing or waving people to go

11    past, through the building.  He walked near the front door and

12    picked broken glass out of his leg.

13          He waved people in and pointed some to his left to

14    pass, and some to his right.  He walked over to where one of

15    the windows had been broken, the shattered glass was evident.

16    Picked up a wooden stand that had previously been under the

17    window.  He does seem to think about it, and then moved the

18    stand to completely out of the way of the broken window and

19    encouraged rioters, by his hand movements, arm movements, from

20    the outside to come in through the window.  He walked around a

21    bit more and then he left the building.

22          But less then a minute later, Your Honor, he came

23    back in and began his self-guided tour of the Capitol, of which

24    he roamed for approximately 30 minutes.  While he was in the

25    building he heard rioters yelling, he saw other rioters having

1    confrontations with the police.  And after about a half hour

2    again he left.

3              Mr. Fee is a decorated retired New York firefighter.

4    And we recognize what he has meant to the community he has

5    served.  He had a career as a dedicated public servant.  On

6    January 6th, as he was one of the thousands that stormed the

7    Capitol, his actions were anything but.

8              We are asking for a sentence of 30 days imprisonment

9    with three years of probation.  Yes, this is a misdemeanor, but

10   the conduct was serious.  The request for jail takes into

11   account that he went in the building, how long he was in the

12   building, and what he did while he was in the building.  Our

13   request also takes into account that he timely accepted

14   responsibility.  He very well may have helped to identify the

15   doors he entered and exited, and did not post or have a

16   presence on social media bragging about what he did, and he did

17   not destroy any evidence.

18             But I think he may very well have helped to identify

19   the doors he came in and left from.  When the case was first

20   filed, we had clear evidence that Mr. Fee was in the building.

21   Mr. Fee, through his lawyer, submitted to the government a

22   diagram, or diagrams, of circled doors that Mr. Fee believes he

23   entered from and exited from.  Almost simultaneous with that,

24   or around the same time, he had individuals within the U.S.

25   Attorney's prosecution team that began and have become very

1    skilled at tracing people throughout the building.  I had

2    contacted what I'm going to refer to as the "trace team," and

3    they were able to trace Mr. Fee's path through the building.

4    Whether that tracing relied on Mr. Fee's indication of where he

5    went in and where he left from, I don't know.  Like I said, it

6    was around the same time that the audit was complete.  He

7    should have credit for presenting that information to them.

8                 With that, I don't have anything further.  I'm not

9    going to reiterate everything I've said in my brief.  The Court

10   indicated that you've read it.  But if you have no questions, I

11   would submit all that.

12                 THE COURT:  Thank you, Ms. Lehr.

13                 Mr. Ring.

14                 MR. RING:  Thank you, Your Honor.  Your Honor, when

15   I'm doing these sentencing memos and I'm preparing, I'll admit

16   to you now, Judge, you know, doing these sentencings for a lot

17   of prior defendants, I've had a hard time coming up with good

18   things to say about my clients' lives, what they've done, how

19   they've lived it.  Frankly, a lot of them haven't led the most

20   laudatory lives.  This is not one of those cases, Judge.

21                 Mr. Fee has lived a good life.  He's worked hard,

22   served the community.  He's done what he can to help others

23   throughout his life.  I've come to know him fairly well over

24   the last 15 months and it's hard to put into words the shame

25   and remorse he's carried for having taken part in the January

1    6th riot.  He prides himself on being someone who has done the

2    right things in life; worked hard and done all those things the

3    right way.  And on January 6th, 2021, he didn't do the right

4    thing.  And he knows that.

5          But he's a decent human being, Judge.  He's lived his

6    life of 53 years prior to January 6th the right way.  It's a

7    life, I submit, that the government is wrong in recommending a

8    jail sentence for the events of January 6.

9          When Thomas went down to Washington, D.C. in January

10   2021 he had absolutely no intention -- there's never been a

11   suggestion that he did it intending any kind of violence,

12   engaging in any kind of violence.  He went down there by

13   himself.  He recently retired from the fire department, he'd

14   just gone through prostate surgery and recovery.  And, frankly,

15   he had some time on his hands.  He'd never been a political

16   person, never been involved politically.  He'll tell you he

17   doesn't really care much about politics.  He just sort of went

18   down there just as something to do.  And that's all it was.

19   Obviously, things turned out very different.

20         He should have, after the rally on January 6th, gone

21   back to his hotel room and come back here to New York the next

22   day, as he planned.  But, instead, he went over with the crowd

23   to the Capitol building.  And even then, there's nothing wrong

24   with walking over there, but at some point he should have

25   turned around, he should have stopped, and he certainly should

1    not have gone in the building.

2            But that's life.  He knows he did wrong, he committed

3    a crime, he's pled guilty.  He accepts responsibility for that.

4    But as the government concedes, he didn't break any doors, he

5    didn't violently enter this building, he didn't commit any

6    vandalism, he didn't attack anybody.  He didn't do anything of

7    the sort, and was charged in this case to reflect that with

8    just a misdemeanor charge.  That doesn't change that what he

9    did was wrong.  He shouldn't have gone in there.

10           I do take one issue with the government's sentencing

11   memo and, sort of, with the suggestion here that he was

12   somehow -- should be punished greater because he was part of

13   the initial breach, so to speak, of the Capitol building.  And

14   that video doesn't bear that out.  You can watch the video.  I

15   know, Judge, I've watched it many times.  Some rioters come in,

16   they break the windows, they jump through the windows, they

17   kick out the door, and then people start streaming in.  If you

18   watch the video closely, you'll see that when they're doing

19   that, Thomas Fee is not nearby.  He's not right outside those

20   doors.  In fact, I counted 42 or 43 people come through those

21   doors after they're kicked open, before Thomas Fee walks in.

22           If you watch the video, outside those doors there's

23   the video of the covered portico and there's three columns on

24   the other side of that portico and a flight of stairs going

25   down to the outside of the Capitol building.  When those doors

1    were being kicked out and those windows were being broken,

2    Thomas Fee was outside that portico area, down the stairs.  And

3    let me tell you, he was actually out there talking to a police

4    officer at the time.  And --

5                THE COURT:  The video doesn't tell us where he is.

6    The video only shows he's inside.

7                MR. RING:  And it shows it -- I probably inspected

8    this video four times, Judge.  If you look at it, you can

9    actually see the doors are open, the group of people come in.

10   You can see Mr. Fee's hat coming up the steps on the outside,

11   to the left, after maybe 20, 30 people had gone in there.

12   Again, I counted the number, it was 42 or 43 people, depending

13   on the time I counted, before Mr. Fee came in.

14               Having said that, Judge, whether he was the 43rd or

15   the 500th person, he should never have entered in the building.

16   He concedes that.  He knows that and I'm not suggesting

17   otherwise.  But what I am saying is that there's a difference

18   between being the fifth person, the third person there when the

19   doors get kicked open and see it and they run in.  He was down

20   those steps when they entered.

21               Judge, if you watch the video, you can see him come

22   up after 20, 30 people have already got in, and eventually he

23   walks through that door.  Again, I'm not minimizing.  He never

24   should have gone in that building.

25               The government says, you know, he highlights that

1    he's pointing out how people go left and right at points when

2    he's inside that building.  There's no plan here.  He's no

3    idea, he's never been in that building before.  He has no idea.

4    He's completely almost just -- almost like goofy, he doesn't

5    even realize which way he's been.  He's pointing some people

6    right, he's pointing some people left.  There's no rhyme or

7    reason.  He shouldn't have done it.  But there was no plan

8    here, he wasn't some sort of nefarious actor who was trying to

9    guide people them go somewhere to do something.  He simply says

10   it in his letter, he described it as a lack of situational

11   awareness.  And I think that is the case here.  He failed in

12   the moment.  And he should realized.  He failed in the moment

13   to recognize the serious of the situation.

14         We all were watching it on television from afar.  It

15   was serious to everybody in the country and throughout the

16   world, seeing this happen to our Capitol.  As he's walking

17   around in there he failed to understand that.  And they

18   highlight in their memo that he sent a selfie to a friend of

19   his who happened to be a federal agent, that's how he's

20   ultimately identified.  That agent turned over those

21   photographs and statements to his supervisors.  And even so, he

22   remains friends with him.  He recognizes that agent did the

23   right thing and turned those over and he bears no ill will for

24   that.  He understands he never should have put that agent in

25   that situation.

1    At some point he did realize the gravity of the

2    situation and he left on his own volition, walked out the door.

3    He wasn't forced out by the police or anything.  He went back

4    to his hotel room and it dawned on him, and I think that's

5    reflected in his actions there, Judge.  He did not post

6    anything on social media bragging about being inside the

7    building, inside the Capitol.  He didn't send any other text

8    talking about being in there.  He recognized at some point that

9    evening that this was bad, this was wrong, he shouldn't have

10   done it.

11   Judge, when he was contacted by law enforcement he

12   immediately identified himself as being in the building, self-

13   surrendered.  He brought his phone, at their request, to his

14   arrest and gave it to them.  He fully cooperated.  He

15   recognized that he needed to do what he can to take

16   responsibility.  We're 15 months after the events of January 6,

17   but Mr. Fee, from the very beginning, said he wanted to take a

18   plea.  There were a number of prosecutors assigned to the case

19   and I don't think we got a plea offer from the government

20   until -- I think it was December or early January.  And

21   ultimately, in January, he took a plea right away.  He's always

22   wanted to plead guilty and accept responsibility, and that's

23   what he's doing.

24   So, Judge, really, all I can tell you is that while

25   the government is right to focus on the events of January 6,

1    the 53 years prior to January 6th ought to count for something.

2    He lived a life that -- not a lot or reliance on that -- but

3    somebody who is a decorated veteran of the fire department, the

4    honors he's received, honor awards, the recognition that I

5    attached to my memo, his response in saving other people's

6    lives has been documented.  All that counts for something.

7         I think the probation was right in their

8    recommendation as well that this is not a case that merits a

9    jail sentence, and probation is appropriate here, Your Honor.

10   Thank you.

11        THE COURT:  Thank you, Mr. Ring.  And does Mr. Fee

12   wish to have anything to say?

13        MR. RING:  Yes, Your Honor.  A few words.

14        THE COURT:  Let's make sure -- you're quite a ways

15   away from the microphone.  So make sure you speak up so I can

16   hear.

17        THE DEFENDANT:  Thank you, Your Honor.  Your Honor,

18   I'm not a public speaker.  I hope I can adequately express how

19   I feel.  It's hard to fully express how sorry I am for being

20   involved in the horrible events of January 6th.  I love this

21   country.  And the fact I was involved in such a shameful event,

22   that it was viewed around the world, it's hard for me to grasp.

23   But I was and I have accepted responsibility for that.  I had

24   no intention of being part of anything like this, ever.

25        I went to the January 6 rally just for something to

1    do.  I'm not a political person.  I have little interest in

2    politics.  I wish I had never gone.  The day I attended that

3    rally, when the speeches were over, people started walking to

4    the Capitol, I went along.  When people started going inside, I

5    went inside.  I should have stopped, I should have turned

6    around.  I'm not a follower.  I should have known.  I failed

7    myself, I failed my values.  I'm very sorry for that.

8              All I can say, Judge, is I'm sorry to everyone

9    involved.  I'm sorry for the country, the country that I love.

10   Thanks for letting me speak today.

11             THE COURT:  Thank you, Mr. Fee.  It's good to hear

12   you.

13             All right.  Couple of things before I actually talk

14   about the sentence to be imposed and give the reasons for it.

15   First of all, I have received and reviewed the presentence

16   report, the sentencing memos from each side, the letters on

17   Mr. Fee's behalf that have been received, the video that the

18   government introduced as evidence, the table on sentences in

19   other cases, and also support the Court's observations of that

20   same information.  Now, this doesn't significantly differ from

21   the government.  I've done an independent one, compilation, as

22   well.  Ongoing in my chambers we keep it up to date with the

23   sentences that are imposed.

24             We do have an issue of restitution, but that's part

25   of the plea, that the defendant will pay $500 restitution to

1    the Architect of the Capitol.  And I will approve that.

2         With respect to a fine, I will say only that at this

3    point that I've reviewed the materials that are available,

4    which is not every bit of financial information, but sufficient

5    financial information to draw the conclusion that the defendant

6    would be able to pay a fine, if I wish to impose one.

7         But now I'm going to indicate the sentence that I

8    will impose in this case and explain the rationale for it.

9    I'll only do it once.  I'll give counsel an opportunity, after

10   I do it, to make any final legal objection before I formally

11   impose the sentence.  But I'll only do this once.

12        Usually, Mr. Fee, you would be standing in court, at

13   the lectern in front of me.  And that's actually a fairly

14   important aspect of the criminal justice system and sentencing

15   for an offense.  And we're doing this by video, so you won't be

16   doing that.  But bear in mind that there is some solemnity to

17   this proceeding, and it's an important part of the criminal

18   justice system and I take it seriously, as you should as well.

19        So, let's start with the nature of the offense.  As

20   said time and time again in the media, by defendants, by judges

21   in deciding issues in imposing sentence with respect to January

22   6, in isolation Mr. Fee's conduct, which is a misdemeanor,

23   involved no violence, no damage to property, nor to person.

24   So, it's different than a lot of the more serious conduct at

25   the January 6 riot and event, which involved multiple police

1    officers, damage to property, physical breach of the Capitol in
2    various places.  Maybe it's a fact, however, even though this
3    conduct is not as serious as that -- as many others face in a
4    context manner, as has been said by many others, and by me on
5    many occasions already, this is extraordinary situation,
6    involving the fully extraordinary and horrific event in
7    American history.
8          The defendant was an active participant in a mob
9    assault on our core democratic values and our cherished
10   institution.  And that assault was intended by many and by the
11   mob at large in general to interfere with an important
12   democratic processes of this country.  I cannot ignore that,
13   cannot pull this misdemeanor out of that context.  That's
14   notwithstanding the fact that the defendant himself may not
15   have intended when he came to Washington, or even during the
16   event that he participated in, he may not have intended to
17   engage or encourage others to engage in violent property damage
18   or other criminal conduct, in the context of that.
19         Now, it's important to look at the conduct here and
20   character of the defendant because his sentencing is an
21   individualized exercise.  Even though I'm going to be talking
22   in a few minutes about other sentences, the sentence in this
23   case is based on the individual circumstances with respect to
24   the defendant.  I agree, by the way, with what other judges
25   have said, and that is, it's an important presumption in these

1    misdemeanor offenses that probation is the appropriate sentence

2    for violation of 5104, that is, a probationary sentence just

3    because it's a misdemeanor.

4            So, the conduct.  He came from New York.  He didn't

5    seem to have an intent to engage in any mob conduct, violence,

6    or anything else of a serious nature that day.  He went to the

7    Capitol and to the rally.  And he entered through the Senate

8    wing door.  Less than a minute after, of course, the window was

9    broken and then from the inside the door was kicked open.  He

10   was then in the Capitol for a total of around 40 minutes.  He

11   did exit and return on at least one occasion.  He roamed the

12   hallway, often alone.

13           He did seem, at least by the video footage, to direct

14   and maybe even encourage others to go further into the Capitol,

15   and may have mildly assisted others to enter by moving

16   something out of the window.  It's not clear that that was the

17   reason it was moved, but it did perhaps make it easier to enter

18   through that window.

19           But there's no evidence that he encouraged or

20   assisted anyone to engage in damage of property or violence.

21   And certainly there's no evidence that he did that, and no

22   assertion by the government that he did that, that he himself

23   engaged in violence or property damage or that he encouraged

24   others to do so.

25           There's one text of relevance which is -- it says, "I

1    am" -- something to the effect of, "I am at the tip of the

2    sphere."  But there's no other social media, no communications

3    that are part of the record here indicating a continuing desire

4    to engage in conduct disruptive of our democratic process and

5    no triumphant, on social media, communications praising the

6    activities of January 6th, or otherwise indicate a lack of

7    remorse, a lack of apology on his participation in the event.

8           Indeed, I think it is fair to say that he cooperated

9    fully with law enforcement, that he has shown complete remorse

10   and accepted responsibility, at all times seems to have been

11   prepared to enter a plea and take responsibility for his

12   conduct.  And since these proceedings have been initiated, he

13   has been in full compliance with all conditions of release.

14          Turning to Mr. Fee himself.  There's no -- absolutely

15   no record.  As I've said, there's a sincere regret and shame

16   that has been exhibited here.  He is a highly honored and

17   decorated firefighter, including courageous service in

18   connection to events outside of that one.  This is, I think you

19   can call it, this is aberrant behavior.  There's nothing in his

20   past history to indicate this kind of criminal conduct.  It was

21   aberrant behavior from a life that is a life of significant

22   public service to the community.

23          He has also had some difficulty in his life, not only

24   medical, circumstances arising out of his service as a

25   firefighter on 9/11, but also he has been successful in

1    overcoming past alcohol abuse.

2              So where does that leave us?  The government is

3    asking for a sentence of 30 days incarceration, three years of

4    probation, and 60 hours of community service.  Now, the

5    combination of incarceration and probation is premised on --

6    that I would have to make significant legal findings that you

7    can, for a misdemeanor, impose a sentence of incarceration and

8    probation.

9              The probation office is suggesting a sentence of no

10   time of incarceration and 24 months of probation.  And the

11   defendant is requesting, through counsel, a probationary

12   sentence.

13             I think what's probably most important here -- maybe

14   not most important, but very important -- is to look at his

15   offense as to other defendants convicted for January 6th events

16   through a plea of guilty to a §5104(e)(2)(G) offense.  I'm

17   going to do that in a moment.  But I will say that looking at

18   this defendant as an individual, I do give him significant

19   credit for his past life; law abiding, a public servant, the

20   limited conduct he engaged in here and the absence of any

21   praise through social media or other communication for the

22   events of January 6, and certainly no indication of any desire

23   to do anything of that sort again.

24             My obligation is to impose a sentence that is

25   consistent with the factors in §3553(a), which is sufficient

1    but not greater than necessary to comply with the purposes of

2    sentencing set forth in that provision.  And that is what I

3    will attempt to deal with.

4              So at this point, let me turn for a second -- or more

5    than a second, to the sentences for others convicted of a 5104

6    violation, 5104(e)(2)(G) violation related to January 6th.  And

7    this is a rough assessment.  Please don't think that I am

8    giving precise numbers.  And the numbers change, obviously,

9    with every sentence that occurs.  But, about 100 defendants

10   have now been sentenced for violations of 5104(e)(2)(G).  And

11   if you look at the data, it looks like over two-thirds -- maybe

12   just over two-thirds -- have been sentenced just to probation

13   and/or fine.  Far fewer, less than a third, have been sentenced

14   to a period of incarceration.  A couple of them -- just a

15   couple, two or three -- have been sentenced to both

16   incarceration and probation.

17             If you then look at the probationary sentences, they

18   are overwhelmingly in the two- to three-year range, 24 months

19   to 36 months range, probably three-quarters or more of them.

20   Fine.  And that makes it so that more than half of the

21   sentences for 5104(e)(2)(G) violations have been probation of

22   24 to 36 months.  Fines have been included in some of these,

23   but not in all.

24             So if you step back -- and, again, this is a very

25   rough assessment, but if you step back and look at the

1    defendants who have received jail time, sentence of

2    incarceration, between two weeks and 45 days is what we're

3    talking about in custody for this offense.  And that's what the

4    government is asking for.  It's pretty clear that almost all of

5    these individuals either had expressed no remorse or done so

6    only in a very limited fashion, had made some statement at or

7    after the time of the event that were either inflammatory or

8    praising the event, social media posts or otherwise, or

9    sometimes it's had not fully cooperated with law enforcement by

10   lies, destroying evidence, withheld evidence; some lack of

11   cooperation of the FBI or other law enforcement.

12          I think that's a pretty accurate assessment of those

13   who wind up getting incarceration for a 5104(e)(2)(G) offense.

14   I'm not going to try to look at the probationary sentences and

15   talk much in the way of generalization here because it's not

16   really possible.  I suss the breakdown based on judges who like

17   to average from the myriad of judges and it just becomes a

18   little more difficult to make too much in the way of

19   generalizations for what the judges do, and particularly the

20   level of probation, to get there.

21          But, most of the sentences are probation.  And I will

22   say again -- this is just a generalization, it's not

23   universally true, but I would say that it's pretty much true --

24   that the judges of this court have routinely rejected the

25   government's request for incarceration for these offenses and

1    instead imposed probation.  They didn't always do it, not all,

2    obviously.  That includes sentences of incarceration.  Even

3    there it's generally less than what the government is asking

4    for.

5              So where does that leave me?  Well, we've gone

6    through the conduct in Mr. Fee's case and I'm not going to

7    repeat it, but it doesn't contain the kinds of concerns that

8    have led to sentences of incarceration, as a generalization.

9              There's no media posts of relevance, other than one

10   text, it's just one text conceding his involvement, if you

11   will.  And there's no violent conduct, damage to property.

12   There's full, absolutely full cooperation and remorse and

13   acceptance of responsibility.  And no there's interference as

14   to lying or something like that.

15             Now, the two cases that I have had previously and

16   sentenced for are, let me call, comparative.  Those are the

17   cases of defendants Brandon Nelson and Abram Markofski.  And

18   each of them had substantial public service in their past,

19   military service, and were remorseful, accepted responsibility.

20   Basically had just spent time in the Capitol -- more time than

21   Mr. Fee, about twice as much time, frankly.  Had a few text

22   messages indicating their crime, but no public post and were

23   cooperative with the FBI in all ways.  And I imposed sentences

24   for them for entering the Capitol, in the same place, just a

25   couple minutes later, I believe.  If you looked carefully at

1   the video, they're shown in the video later on, entering.  And

2   like Mr. Fee, they didn't have any destruction of property or

3   violence while inside, moving about the Capitol.

4          Mr. Fee maybe is different from them in that he was

5   directing traffic, a responsibility.  I don't know if they can

6   call it a leadership role, I don't think it's quite that.  But

7   it is an active engagement role.  And as I said, Nelson and

8   Markofski, they received 24 months of probation and some

9   community service, as well as a fine.

10         With that, I'll turn to the defense before I impose

11  sentence.  Having considered all of this information and the

12  recommendation of the government, the defendant, and the

13  probation office, I've concluded that no sentence of

14  incarceration is warranted here.  Given the conduct that's

15  involved, characteristics, history of law abiding, and, really,

16  commendable public service, and his lack of any subsequent

17  praise for the terrible activities on January 6th, his full

18  acceptance of responsibility and remorse, all of that leads me

19  to not impose a sentence of incarceration and, instead, to

20  impose a sentence of 24 months of probation.

21         I believe that is the right period of probation for

22  this incident.  I'm not all the way to 36 months, but

23  significant period of probation.  And I believe that sentence

24  is not only one that will avoid unwarranted sentencing

25  disparities among defendants with similar records, who have

1    committed similar conduct, and that is the command of

2    3553(a)(6), but it's also consistent with the other factors,

3    with respect to the seriousness of the offense; very, very

4    serious events of January 6, serious conduct by Mr. Fee,

5    although not the most serious that occurred on January 6.  It

6    will promote respect for the law, provide just punishment for

7    the offense and, of course, special and specific to Mr. Fee,

8    and general deterrent to others engaging in this type of

9    conduct.

10           And with that, I'm going to turn now to read the

11   sentence that is to be imposed.

12           Pursuant to the Sentencing Reform Act of 1984 and in

13   consideration of the provisions of Title 18 of the

14   United States Code §3553, it is the judgment of the Court that

15   you, Thomas Fee, are hereby sentenced to a term of 24 months;

16   that is, two years of probation on Count 4.

17           In addition, you are ordered to pay a special

18   assessment of $10, in accordance with Title 18 of the U.S. Code

19   §3013.  I am imposing, as well, a fine in this case.  I believe

20   there is an ability to pay.  I think a fine is an appropriate

21   further indication of seriousness of this offense.  And the

22   fine is $500.

23           The Court will authorize imposition and jurisdiction

24   of this case to be transferred to the United States District

25   Court for the Eastern District of New York.

1          While on supervision you shall abide by the following

2     mandatory conditions, as well as the standard conditions of

3     supervision which are imposed to establish the basic

4     expectations for your conduct while on supervision.  Those

5     mandatory conditions include that you must not commit another

6     federal, state, or local crime.  You must not unlawfully

7     possess a controlled substance.  You must refrain from any

8     unlawfully use of controlled substance, and submit to one drug

9     test within 15 days of placement on supervision -- probation,

10    that is, and at least two periodic drug tests thereafter as

11    determined by the court.

12         You must pay the restitution in accordance with Title

13    18 of the U.S. Code § 3663 and 3663A, or any other statute

14    authorizing a sentence of restitution.  You are ordered to make

15    restitution in the amount of $500 to the Architect of the

16    Capitol.  The Court determines that that is an appropriate

17    restitution and will order that, as agreed to in the plea

18    papers.

19         The restitution payment shall be made to the Clerk of

20    the Court for the United States District Court for the District

21    of Columbia, for disbursement to the Architect of the Capitol,

22    in the amount of $500.  And the Office of the Chief Financial

23    Officer, Kathy Sherrill, CPA, Ford House Office Building, Room

24    H2-205B, Washington, D.C. 20515.

25         I'm also ordering community service, which I think

1    is, again, an important reminder of the need to be mindful of

2    one's conduct and activities and the obligation that we owe to

3    each other and to our community.  And I will order community

4    service in the amount of 50 hours, to be completed within the

5    first 12 months of probation.  That will be at the direction of

6    the current local probation office.

7            Financial obligations are immediately payable to the

8    Clerk of the Court, U.S. District Court, at 333 Constitution

9    Avenue Northwest, Washington, D.C. 20001.  Within 30 days of

10   any change of address you shall notify the Clerk of the Court

11   of the change until such time as all financial obligations are

12   paid in full.  The probation office shall release the

13   presentence investigation to all appropriate agencies.  That

14   includes the probation office in the approved district of

15   residence in order to execute your sentence.

16           Now, Mr. Fee, you have been convicted by a plea of

17   guilty.  You can appeal your conviction, if you believe your

18   guilty plea was somehow unlawful or involuntary or if there's

19   some other fundamental defect in the proceedings that was not

20   waived by your guilty plea.  You also have a statutory right to

21   appeal your sentence under certain circumstances, particularly

22   if you think your sentence is contrary to law.  However, a

23   defendant may waive those rights as part of the plea agreement,

24   and you have entered into a plea agreement which waives some or

25   all of your rights to your conviction, and the sentence as

1    well.  Such waivers are generally enforceable, but if you

2    believe that the waiver is unenforceable, you can present that

3    theory to the appellate court.

4         You have the right to apply for leave to appeal in

5    forma pauperis.  Which basically means free of cost.  And if

6    you were to so request and qualify, the Clerk of the Court

7    would prepare and file a notice of appeal on your behalf.  But

8    I do note that you are represented by very able counsel here

9    today, who will be able to assist you in that process, if you

10   wish to follow it.  With few exceptions, any notice of appeal

11   must be filed within 14 days of the entry of judgment.  I

12   anticipate the judgment will be entered either today or

13   tomorrow.

14        With that, let me ask counsel if they know of any

15   good reason, other than the reasons that is have been stated

16   here today, why the sentence should not be imposed as I have

17   just indicated.  Ms. Lehr?

18        MS. LEHR:  No, Your Honor.

19        THE COURT:  Mr. Ring?

20        MR. RING:  No, Your Honor.

21        THE COURT:  Fine.  With that, therefore, it is the

22   sentence of the Court.

23        And then I ask you, Ms. Lehr, if you with anything

24   else we need to do?

25        MS. LEHR:  Yes, Your Honor.  In accordance with the

1    plea agreement, the government would move to dismiss Counts 1

2    through 3 of the information.

3                 THE COURT:  And that will be granted, and those

4    counts, 1 through 3, of the information will be dismissed.

5                 With that, anything else that we need to cover here

6    today, Mr. Ring?

7                 MR. RING:  No, Your Honor.  Thank you.

8                 THE COURT:  Ms. Lehr?

9                 MS. LEHR:  No, sir.  Thank you.

10                THE COURT:  All right.  I will get that judgment put

11   out either today or tomorrow.  Probably -- well, tomorrow it

12   might happen.  Probably more likely it will happen on Monday.

13   Okay.

14                And let me just close with a parting word for you,

15   Mr. Fee.  We cannot overstate the seriousness of the events of

16   January 6.  They simply are a blight on this country.  Your

17   involvement in that is, as you've recognized, very serious and

18   shameful and you'll have to live with that for the rest of your

19   life.  The sentence is warranted here for all the

20   circumstances, both in terms of your past and in terms of your

21   conduct on that date and how you've conducted yourself since

22   then.  But, nonetheless, this is something that you're going to

23   carry with you.  And I hope that it is a reminder of all that

24   is good about this country and the institutions that are so

25   important to the democracy of our country; democratic

1    institutions and processes that were threatened on January 6.

2              So, with that, I wish you well in your probationary

3    sentence.  You'll be in compliance, obviously, or I'll see you

4    again.  And I don't want to see you again, quite frankly.

5              With that, I wish everyone a good day.

6              MR. RING:  Thank you again.

7              THE COURTROOM DEPUTY:  Judge, if can I have a minute

8    of your time before we go off-the-record?

9              Counsel, this honorable court stands in recess until

10   return of court.  Have a good day, everybody.

11                          *   *   *

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1              CERTIFICATE OF OFFICIAL COURT REPORTER

2

3       I, JANICE DICKMAN, do hereby certify that the above and

4    foregoing constitutes a true and accurate transcript of my

5    stenographic notes and is a full, true and complete transcript

6    of the proceedings to the best of my ability.

7                        Dated this 3rd day of July, 2022

8

9

10                        _____

11                        Janice E. Dickman, CRR, CMR, CCR
                         Official Court Reporter
12                        Room 6523
                         333 Constitution Avenue, N.W.
13                        Washington, D.C.  20001

14

15    This hearing was held telephonically in compliance with the
     COVID-19 pandemic stay-at-home orders and is, therefore,
     subject to the limitations associated with the use of current
16    technology, including but not limited to telephone signal
     interference, static, signal interruptions, and other
17    restrictions and limitations associated with remote court
     reporting via telephone, speakerphone, and/or
18    videoconferencing.

19

20

21

22

23

24

25